**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL O'MALLEY, Individually and on Behalf of Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:20-cv-01331 |
| KASS MANAGEMENT SERVICES, INC., | ) ) ) | |
| Defendant. | ) ) | |

**PARTIES' JOINT UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I.  INTRODUCTION

On February 24, 2020, Plaintiff filed a lawsuit against Defendant, which is pending in the United States District Court for the Northern District of Illinois, Case No. 1:20-cv-01331 (the "Litigation"). Plaintiff alleges in the Litigation that Defendant violated the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, by causing his bank account to be debited for charges that he did not authorize. The Parties engaged in a half-day, settlement conference with The Honorable Judge Sunil Harjani, on May 10, 2022. During this settlement conference, the parties were able to reach a settlement agreement.

On June 21, 2022, this Honorable Court granted the Parties' Joint Motion for Preliminary Approval of Class Settlement (ECF #81) and the Supplement to the Motion for Preliminary Approval on the Issue of Attorneys' Fees (ECF #83). *See* (ECF #85).

## II.  NATURE OF THE CASE

According to the Amended Complaint, Plaintiff Daniel O'Malley ("O'Malley") at all relevant times, was a unit-owner in a residential building located in Chicago, Illinois. Kass

1

Management Services, Inc. ("Kass") was the property manager that collected the monthly assessment charges from O'Malley and other unit owners of the property on behalf of the property's condominium association ("Association"). O'Malley claims that in August of 2017, the Association filed a lawsuit against him for alleged violations of the Association's bylaws and that O'Malley and the Association reached a settlement in April of 2018. Pursuant to the settlement agreement, O'Malley was to pay the Association a recurring monthly fee of $233.00 for a total of 18 months. O'Malley further alleges that in April 2018, he sent Kass a check for $233.00 as the first payment pursuant to the settlement agreement with the Association, and that he sent another check in the same amount in May 2018. Thereafter, O'Malley claims that in June 2018, Kass began automatically withdrawing the monthly legal fee from Plaintiff's bank account without obtaining his authorization. Kass denies that it did not have authority to make these withdrawals.

In addition to numerous discussions between counsel, the Parties participated the May 10, 2022 settlement conference with the Honorable Judge Harjani. At all times, the Parties' settlement negotiations were adversarial, non-collusive, and at arm's-length. These discussions culminated in the Settlement Agreement, which was been approved by this Court.  *See* (ECF #85).

### III.    THE SETTLEMENT

**A.    THE SETTLEMENT CLASS**

On June 21, 2022, this Court, for the purposes of settlement, preliminary found, that the Class Members were similarly situated and met the requirements for class certification under Fed. R. Civ. P. 23. The Court certified, for the purposes of settlement only, the following Settlement Class pursuant to Fed. R. Civ. P. 23:

> All people whose bank accounts were automatically debited by Kass Management Services for a recurring fee other than a fee for assessments, gas, parking, cable, internet, and other special assessments through an

unauthorized electronic fund transfer, or who otherwise suffered a violation of EFTA by Kass' act or omission at any time on or after March 1, 2019, up to and including May 10, 2022.

**B.      SETTLEMENT RELIEF**

**1.      Class Member Relief: Settlement Fund**

The Settlement establishes a $145,000.00 Settlement Fund, which will be used to pay: (1) cash settlement awards to Settlement Class Members that total $84,000; (2) settlement administration expenses that do not exceed $6,000; (3) court-approved attorney's fees and costs that total $47,000 ($46,000 in attorney's fees and $1,000 in costs); and, (4) a court-approved incentive award to the Class Representative, in the amount of $8,000.

Each Settlement Class Member, shall be entitled to receive an amount equal to the Settlement Class Recovery divided by the total number of Class Members (a total class of 772 unique individuals), distributed on a pro rata basis. If all of the attorneys' fees, expenses, incentive award, and notice and administration expenses are approved as requested, each Class Member will receive an equal payment in the amount of $108.81.

**2.      Class Representative Incentive Award**

If approved by the Court, Plaintiff, Daniel O'Malley will receive an incentive award of $8,000 from the Settlement Fund. This award will compensate Plaintiff for his time and effort and for the risk undertaken in prosecuting this case. The incentive award has been preliminary approved by this Court.

**3.      Attorneys' Fees and Costs**

Class Counsel has applied for an award of attorneys' fees in the amount of $47,000.00. This award has been preliminary approved by the Court. As Class Counsel addressed in their Supplement to the Motion for Preliminary Approval on the Issue of Attorneys' Fees (ECF #83), such an award of attorneys' fees and costs fairly compensates Class Counsel for the work already

performed in relation to the litigation, as well as the remaining work to be performed in securing the final Court approval of the Settlement, making sure the Settlement is fairly implemented, and obtaining dismissal of the action.

### 4.  Remaining Funds – *Cy Pres*

Any amount remaining in the Settlement Fund after paying all Approved Claims, notice and administration expenses, and any attorney fee award, costs, and incentive award, will be distributed to Connections for the Homeless: Hilda's Place, 1458 Chicago Ave., Evanston, Illinois 60201. This will only include the amount remaining from uncashed checks, to the extent further distribution to the Class is not administratively feasible.

## C.  NOTICE AND SETTLEMENT ADMINISTRATION

All notice and administration costs will be paid from the Settlement Fund. The Parties agreed upon, and this Court previously approved, the nationally recognized class action administration firm Analytics Consulting, LLC ("Analytics") to be the Settlement Administrator and to implement the Class Notice Plan and administer the Settlement, subject to review by counsel. The Settlement Administrator's duties include: (a) establishing and maintaining a related settlement fund account; (b) establishing and maintaining a calendar of administrative deadlines and responsibilities; (c) printing and mailing the Notice of Class Action Settlement; (d) receiving and validating Requests for Exclusion or Objections submitted by Settlement Class Members; (e) processing and mailing payments to Settlement Class Members and Class Counsel; and, (f) other tasks as the Parties mutually agree or the Court orders Analytics to perform. The Settlement Administrator sent Class Notice via the U.S. Postal Service to the names and addresses of all Class Members. *See* **Exhibit A** (Class Notice). The final list of Class Members and their addresses was provided by Defendant. *See* **Exhibit B** (Affidavit of Caroline Barazesh, Analytics LLC Claims Administrator).

**D.      OPT-OUT AND OBJECTION PROCEDURES**

Persons in the Settlement Class had the opportunity to exclude themselves from the Settlement or object to its approval. The procedures and deadlines for filing opt-out requests and objections were conspicuously listed in the Notice. *See* **Exhibit A**. The Notice informed Class Members that they will have an opportunity to appear and have their objections heard by this Court at the Final Approval Hearing. *Id.* The Notice also informed Settlement Class Members that they will be bound by the release contained in the Settlement Agreement unless they timely exercised their opt-out right. *Id.*

**E.      RELEASE**

The release is appropriately tailored to this case, limited to claims involving alleged violations similar to those at issue here, and the Class is limited to the list of 772 unique individuals whose accounts were debited by Defendant for fees other than those expressly stated in Defendant's ACH Authorization Form. In exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the Settlement will release Defendant and its predecessors, successors, parents, subsidiaries, affiliates, officers, directors, partners, members, principals, employees, agents, attorneys, insurers, servants, and assigns from all claims, demands, causes of actions, suits, damages, and fees arising under §1693e(a) of the Electronic Fund Transfer Act and/or any other federal or state electronic transfer laws, whether in law or equity, that have been or could have been brought by a Releasing Person against Kass or any property it manages.

## IV.      ARGUMENT

**A.      THE SETTLEMENT APPROVAL PROCESS**

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might

otherwise overwhelm any potential benefit the class could hope to obtain. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312–13 (7th Cir. 1980) (noting that "[i]n the class action context in particular there is an overriding public interest in favor of settlement") (citations, quotations, and internal marks omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also* 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") § 11:41 (4th ed. 2002) (citing cases). The traditional means for handling claims like those at issue here – individual litigation – would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims of the individual Settlement Class Members, would be impracticable. Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

A court may approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." Newberg § 11.41; *Am. Int'l Grp., Inc. v. ACE INA Holdings*, Nos. 07-2898, 09-2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (quotation and internal citation omitted).

Approval of a class action settlement is a two-step process. *Armstrong*, 816 F.2d at 314. At the preliminary approval stage, the question for this Court is whether the settlement falls within a range of possible approval and therefore warrants dissemination of notice apprising

class members of the proposed settlement. *Id.* Specifically, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties'' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the Court preliminarily approves the class action settlement, it then proceeds to the second step in the review process – the fairness hearing. *Id.*; *Manual for Complex Litig.* § 21.633 (4th ed. 2004).

In assessing the fairness, reasonableness and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court "should not substitute [its] own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315. Fed. R. Civ. P. 23 provides that, where a proposed settlement would bind class members, a court may only approve it after a hearing and upon a finding that it is fair, reasonable, and adequate, after considering the following factors:

    (A)   the class representatives and class counsel have adequately represented the class;

    (B)   the proposal was negotiated at arm's length;

    (C)   the relief provided for the class is adequate, taking into account:

        (i)   the costs, risks, and delay of trial and appeal;

        (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)   any agreement required to be identified under Rule 23(e)(3); and

    (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Courts in this Circuit have also considered: (1) the strength of the case

for plaintiff on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the presence of collusion in reaching a settlement; and (4) the stage of the proceedings and the amount of discovery completed. *Synfuel Tech., Inc. v. DHL Express (USA), Inc.*,463 F.3d 646 (7th Cir. 2006) at 653; *see also Armstrong*, 616 F.2d at 314; *Isby*, 75 F.3d at 1199.

As set forth herein, the Settlement warrants final approval as it is fair, reasonable, and adequate.

## B.      THE SETTLEMENT MERITS FINAL APPROVAL

### 1.      The Settlement Provides Substantial Relief to the Settlement Class Particularly in Light of the Uncertainty of Prevailing on the Merits

#### a.      Benefits to the Class

Whether the relief provided for the class is adequate is a relevant factor in determining whether to approve a proposed settlement. Fed. R. Civ. P. 23(e)(2)(C). *Synfuel Techs., Inc.*, 463 F.3d at 653. Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to Plaintiff." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010).

The Settlement Agreement requires Defendant to pay $145,000 into a fund out of which Settlement Class Members will receive a cash payment. Each of the 772 Class Members will receive cash payment in the amount of $108.81. Without the settlement, the Class ran the very real risk of recovering nothing, and even in the event of judgment, recovery against Defendant was far from certain. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and

their counsel." *Armstrong*, 616 F.2d at 315.

Here, the Settlement treats Class Members equitably relative to each other, *see* Fed. R. Civ. P. 23(e)(2)(D); each Class Member has the equal opportunity for a share of the Settlement Relief. The Parties agree to resolve this matter for a Settlement Fund of $145,000. Because the relief provided for the Class in the Parties' proposed Settlement is fair, reasonable, and adequate, this factor supports final approval.

### b.       The Costs, Risks, and Delay Resulting from Continued Litigation Support Final Approval.

The costs, risks, and delay of trial and appeal are also relevant factors as to the approval of a proposed settlement. Fed. R. Civ. P. 23(e)(2)(C)(i). Plaintiff continues to believe that his claims against Defendant have merit, and that he could make a compelling case if his claims were tried. Nevertheless, Plaintiff's claims would face a number of difficult challenges if the litigation were to continue). Apart from the numerous affirmative defenses asserted in its Answer, Defendant argued that statutory damages in this litigation must be capped at $45,000.

15 U.S.C.A § 1693m(a)(2)(B) contains a provision regarding damages in class action matters. 15 U.S.C.A § 1693m(a)(2)(B) states, "[I]n the case of a class action, such amount as the court may allow, except that (i) as to each member of the class no minimum recovery shall be applicable, and (ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant." Most notably, damages are capped at 1% of the net worth of the defendant. Here, based on the report commissioned in 2019 and exchanged in discovery, the total equity value of Defendant is $4,500,000.

There is also the issue of whether Plaintiff and the Class would be entitled to recover actual damages. 15 U.S.C.A. § 1693m(a)(1) states that actual damages must occur "as a result"

of a violation of the statute. 15 U.S.C.A. § 1693m(a)(1). Thus, in order for O'Malley or any class member to recover actual damages, they would have to prove that alleged violation was the cause of the harm. *Stilz v. Standard Bank & Tr. Co.*, No. 10 C 1996, 2010 WL 5158108, at *3 (N.D. Ill. Dec. 14, 2010). In cases that allege actual damage, the plaintiff is required to plead detrimental reliance. *Id.* at *4. In fact, the Court in *Stilz* found that the transaction fee charged for the use of an ATM was not an actual damage suffered by the plaintiff. *Id.* citing *Voeks v. Pilot Travel Centers*, 560 F. Supp. 2d 718, 725 (E.D. Wis. 2008). Here, O'Malley and the Class would face a significant challenge in proving that the amounts debited from their bank accounts were or resulted in actual damages recoverable under §1693m(a)(1) since the debited amounts were for legitimate fees.

Litigation here would also be lengthy and expensive if this action were to proceed. Although the Parties have engaged in significant discovery, extensive motion work including motions for summary judgment and class certification remain. Expert discovery would also need to be completed. Realistically, it could be more than a year before the case would proceed to trial, and the appeals process may further delay any judgment in favor of Class Members. The Settlement, instead, avoids these risks and provides immediate and certain relief. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). Furthermore, the settlement yields benefits to the class that are significant in light of Defendant's potentially strong defenses should the case proceed to trial. As such, the costs, risks, and delay inherent in continued litigation here support final approval of the Parties' proposed Settlement.

2.      **The Settlement Resulted from Extensive, Arm's-Length Negotiations with Experienced Counsel, and Is Not the Result of Collusion.**

That a proposed settlement was negotiated at arm's length is a relevant factor in considering whether to approve it. Fed. R. Civ. P. 23(e)(2)(B). The requirement that a settlement be fair is designed to prevent collusion among the parties. *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approving settlement upon a finding of no "hanky-panky" in negotiations). There is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations. Newberg, *supra*, § 11:42; *see also Am. Int'l Grp.*, 2012 WL 651727, at *10.

Here, the proposed settlement was negotiated after a settlement conference with the Honorable Judge Harjani and was only effectuated after significant back-and-forth between the Parties. Plaintiff's counsel are experienced in the litigation of class action cases, particularly under the EFTA, as are Defendant's counsel. In negotiating this Settlement, Plaintiff's Counsel had the benefit of years of experience with class actions in general and a familiarity with the facts of this case in particular. The fact that Plaintiff achieved an excellent result for the Settlement Class despite facing significant procedural and substantive hurdles raised by skilled defense counsel is a testament to the non-collusive nature of the Settlement. *See* Fed. R. Civ. P. 23(e)(2)(A) (providing that whether "class counsel have adequately represented the class" is a relevant factor to consider in relation to approval of a proposed settlement).

3.      **The Stage of the Proceedings and the Amount of Discovery Completed Supports Final Approval**

The Parties have engaged in substantial, substantive discovery, permitting a thorough analysis of the factual and legal issues involved in this matter. Settlement negotiations have been prolonged and hard-fought. Before the settlement conference with Judge Harjani, the Parties provided extensive written analyses of the factual and legal issues involved with the case.

Counsels' thorough legal and factual analyses—including based on substantial discovery—informed the Settlement.

### 4. The Opinion of Counsel Favor Final Approval

Class Counsel are experienced in class action litigation, and have a substantial amount of information to evaluate, negotiate, and make well-informed judgments about the adequacy of the Settlement. In Class Counsel's opinion, the Settlement is fair, reasonable, and adequate. It is appropriate for the Court to place significant weight on the unanimously strong endorsement of this Settlement by Class Counsel. Plaintiff had the benefit of attorneys who were both experienced in complex and class litigation and very knowledgeable of particular legal and factual issues presented in the case. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d at 1020; *see also Meyenberg v. Exxon Mobil Corp*., 2006 U.S. Dist. LEXIS 97057 at *18 (S.D. Ill. June 6, 2006) (Wilkerson, J.).

## C. PLAINTIFF'S REQUESTED FEES ARE REASONABLE

The terms of any proposed award of attorney's fees, including timing of payment, is also a relevant factor to consider in weighing a proposed class settlement. Fed. R. Civ. P. 23(e)(2)(C)(iii). Plaintiff's Counsel seek an award of $47,000 ($46,000 in attorneys' fees and $1,000 in costs). Per the Court's guidance during the June 16, 2022 hearing on the Parties' Joint Motion for Preliminary Approval of the Class Action Settlement (Dkt. No. 81) Plaintiff's counsel amended their request for attorney fees from the previously sought amount of $53,000 (plus $1,000 sought in costs incurred) to $46,000.00. The amended request was preliminary approved by this Court. *See* (ECF #85).

The amended requested attorney fee is approximately 35% of the net settlement award. The requested fee is in line with the Seventh Circuit's suggestion in *Pearson* that "attorneys' fees

awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc*., 772 F.3d 778 at 782 (2014). A 35% fee is also in line with awards in a number of post-*Redman* and *Pearson* class action settlements. For example, in *Kolinek v. Walgreen Co.*, a Telephone Consumer Protection Act class action case, the Court awarded 36% of the net settlement award where the case settled after 14 months of litigation, including two rounds of motions to dismiss. 311 F.R.D. 483 (N.D. Ill. 2015). In *Kaufman v. Am. Express Travel Related Services, Co*., a statutory fraud class action case, the Court approved an award of 34.8% of the net settlement award. 877 F.3d 276 (7th Cir. 2017). In re *Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig*., the Seventh Circuit approved attorney's fees in excess of the benefits to class because counsel devoted extensive time and effort to a difficult case. 867 F.3d 791 (7th Cir. 2017).

Although *Redman*[1] and *Pearson* provide guidance for evaluating the reasonableness of attorney fees, they do not establish that class counsel is entitled to fees in the amount of one-third of the actual class recovery (or, indeed, of any particular fraction of the actual class recovery). *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.,* 897 F.3d 825, 833 (7th Cir. 2018). A district court should assess the fee "[b]ased on the market for legal services in class cases, the quality of Counsels' performance in this case, the achieved result, and the amount of work necessary to resolve the case." *Id.*

Here, Class Counsel's request for 35% fee is appropriate given the quality and work performed by them, the risks presented by this case, and the result achieved. The settlement was reached after more than two years of litigation, during which Class Counsel prevailed on a Motion for Judgment on Pleadings, was instrumental in setting Seventh Circuit precedent

---

[1] *Redman v RadioShack Corp*., 768 F.3d 622 (7th Cir. 2014)

relative to the accrual of Electronic Transfer Funds Act claims, and went through several rounds of discovery that necessitated motion practice. The achieved settlement will result in a $108.81 award per claimant. The class member's awards will be distributed on an opt-out basis, meaning that each claim member will receive the award without having the need to file a claim or present any evidence in support.

The current settlement allows the class to recover the maximum in statutory damages - $45,000.00 plus $39,000.00 in actual damages for a total class recovery of $84,000.00. Unlike the coupon-based settlement disapproved by the Seventh Circuit in *Redman*, here each class member will be getting a check for $108.81. In that sense, "the benefits of the settlement ha[ve] been traced with some accuracy, and costs [have been] shifted with some exactitude to those benefiting." *Pearson,* 772 F.3d at 782 (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480–81, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)) (internal quotation marks omitted). And once deposited into the settlement fund, these benefits will not revert to Defendant—any remaining funds after the two rounds of distribution will form the residual *cy pres* award to Connections for the Homeless: Hilda's Place.

The requested fee is reasonable under the circumstances and the complexity of this case. In the Seventh Circuit, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001).

Plaintiff's Counsel have achieved an excellent result for the Settlement Class. The Settlement creates a Settlement Fund of $145,000, affording Settlement Class Members direct monetary relief. Although Plaintiff's Counsel were confident in the ability to succeed at class certification and at trial, success was by no means guaranteed, especially considering

Defendant's opposition and the complexity of the issues involved. Finally, the fee is in line with those deemed reasonable in the Seventh Circuit. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) ("[A]ttorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel.").

Based on all of the foregoing, Plaintiff's counsel respectfully requests the Court approve their request for attorney's fees and costs in the amount of $47,000. The proposed award is fair, reasonable, adequate, and well within the permissible range of possible judicial approval.

**D. THE REQUESTED INCENTIVE AWARD IS REASONABLE.**

Incentive awards for class representatives like the one requested here are appropriate. Such awards, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving incentive award of $25,000); *see also* Manual for Complex Litig. § 21.62, n. 971 (incentive awards may be "merited for time spent meeting with class members, monitoring cases, or responding to discovery"). Such awards are generally proportional to the representative's losses or claims, and can range from several hundred dollars to many thousands of dollars.

Here, Named Plaintiff's ("O'Malley") request for an incentive award of $8,000 is appropriate. Unlike unnamed persons in the Settlement Class, who will enjoy the benefits of his efforts without taking any personal action, O'Malley exposed himself to investigation, committed himself to all the rigors of litigation in the event the case did not settle, and subjected himself to all the obligations of a named party. Furthermore, O'Malley provided documentation and details regarding the facts of the cases, had to respond to several rounds of discovery, provided responsive documents, attended the settlement conference with Judge Harjani, and considered and ultimately approved the Settlement.

15

**E.     THE CLASS NOTICE SENT SATISFIES DUE PROCESS**

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* Manual for Complex Litig., *supra*, at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). According to the Manual for Complex Litigation, § 21.312, a settlement notice should do the following:

- Define the class;

- Describe clearly the options open to the class members and the deadlines for taking action;

- Describe the essential terms of the proposed settlement;

- Disclose any special benefits provided to the class representatives;

- Indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement;

- Explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set out those variations;

- Provide information that will enable class members to calculate or at least estimate their individual recoveries; and

- Prominently display the address and phone number of class counsel and the procedures for making inquiries.

Here, The Class Notice satisfied all of the above criteria. The Notice is clear, straightforward, and provided persons in the Settlement Class with enough information to evaluate whether to participate in the Settlement. The Notice satisfied the requirements of Rule 23. *See F.C.V., Inc. v. Sterling Nat'l Bank*, 652 F. Supp. 2d 928, 944 (N.D. Ill. 2009) (Rule 23(b)(3) class) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985)) (explaining

that a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

When considering a proposed settlement, courts also consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Claims Administrator sent notice via U.S. Mail to all addresses for all Class Members identifiable in the list containing the 772 unique individuals produced by Defendant.

This Settlement itself proposes the gold-standard in class relief: cash payments. Class Members with known addresses do not need to submit a Claim in order to receive a share of the Settlement Relief. The Settlement Administrator performed a lookup on the addresses in the Class List to obtain associated contact information, and thereafter provided Mail Notice by means of separate first-class mailings to those identified names and addresses. In the event a Mail Notice was returned as undeliverable, the Settlement Administrator then ran further reverse-lookups to obtain additional addresses and resent the Notice.

Claimants do not need to attach any documentary evidence for claims to be approved. The claims and payment process was designed to be accessible and straightforward without placing undue burdens on Class Members. The effectiveness of the Parties' proposed method of distributing relief to the Class thus supports final approval.

Moreover, the Class Notice plan satisfies due process, especially because Rule 23 does not require that each potential class member receive actual notice of the class action. A court must simply make certain that class members receive "the best practicable notice that is: 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *F.C.V., Inc.*, 652 F.

Supp. 2d at 944 (Rule 23(b)(3) class) (quoting *Shutts*, 472 U.S. at 808).

The Class Notice constituted the best notice practicable under the circumstances, it provided due and sufficient notice to the Settlement Class, and fully satisfied the requirements of due process and Federal Rule of Civil Procedure 23. This factor thus further supports final approval.

## F.   THERE HAS BEEN NO OPPOSITION TO THE SETTLEMENT BY ANY CLASS MEMBERS

With respect to "the opposition to settlement among affected parties", no class members have objected to the settlement or opted out. *See* **Exhibit B**. The fact that there will be 100% Class Member participation in the recovery strongly favors a finding that the settlement is fair, reasonable and adequate.

## G.   THE COURT SHOULD GRANT CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

Class certification is proper if Plaintiff satisfies the requirements of Rule 23(a) and one of the prongs of Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). Rule 23(a) requires Plaintiff to establish "'numerosity, commonality, typicality, and adequacy of representation.'" *Kleen Products LLC v. Int'l Paper*, 306 F.R.D. 585, 589 (N.D. Ill. 2015) (quoting *Messner*, 669 F.3d at 811). In this case, Plaintiff seeks certification under Rule 23(b)(3), which "requires the court to find[ ] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (quoting the Rule) (internal quotation marks omitted).

The purpose of Rule 23 is to provide for the efficient administration of justice, as the class action mechanism allows large numbers of claims involving the same core issues to

proceed in the aggregate, providing a path to relief where otherwise there would be none. "Class actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981); Wright, *et al.*, 7A *Fed. Practice & Proc.* § 1751 (3d ed. 2010). The Rule 23(a) Factors are met.

### a. The Class Is Sufficiently Numerous and Joinder Is Impracticable.

A plaintiff does not need to "specify the exact number of persons in the class, … but cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity." *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989) (internal citations omitted). The Seventh Circuit has implied that even a class of forty may be sufficient to warrant class certification. *See Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006) (noting that "[s]ometimes 'even' 40 Plaintiff would be unmanageable"). Numerosity is determined prior to any consideration of whether a particular class member has a valid claim. *See Parko v. Shell Oil Co.,* 739 F.3d 1083, 1084 (7th Cir. 2014) ("How many (if any) of the class members have a valid claim is the issue to be determined *after* the class is certified.") (emphasis in original).

In this case, there are 772 Settlement Class Members. This more than establishes that "joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). Numerosity is satisfied.

### b. The Settlement Class Shares Many Common Issues of Law and Fact.

"One of the requirements for a class action in federal court is the existence of 'questions of law or fact common to the class.'" *Suchanek*, 764 F.3d at 755 (quoting Fed. R. Civ. P. 23(a)(2)). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Id.* at 756 (citing *Pella Corp. v. Saltzman,* 606 F.3d 391, 394 (7th Cir. 2010)). "The Supreme Court has explained that 'for purposes of Rule 23(a)(2) even a single common question will do.'" *Id.* at 755 (quoting *Wal-*

*Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011)). Here, every Class Member's claims arise from the same common nucleus of operative facts: Kass debited their account through ACH transfer or similar electronic means for a charge not specifically listed on the ACH Authorization form. This fact is dispositive, applies equally to all Class Members and, importantly, can be *shown* using common proof and uniform legal analysis. The commonality requirement is therefore met. As the Seventh Circuit stated, "[c]lass certification is normal in litigation under § 227, because the main questions … are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

### c. Plaintiff's Claims Are Typical of the Settlement Class.

As with commonality, the threshold requirement for typicality is "not high." *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009). Typicality means that the plaintiff's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of the other class members and ... [the] claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). This component is usually satisfied where "defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). However, typicality does not require that the representative's claims be identical to every other class member. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) ("factual variations may not defeat typicality").

Here, Plaintiff satisfies the typicality requirement because its interests are sufficiently aligned with those of the Class. Like all Class Members, Plaintiff's account was debited for a charge not specifically listed on the ACH Authorization form. He seeks the same relief as the Class and is not subject to unique defenses. Consequently, typicality is met.

### d. Plaintiff and its Counsel Are Adequate Representatives.

"Rule 23(a)(4) requires that the named Plaintiff and class counsel 'will fairly and adequately protect the interests of the class.'" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014), petition denied by *In re Caribbean Cruise Line, Inc.*, 2014 U.S. App. LEXIS 25084 (7th Cir. 2014) (quoting the Rule); *see also* Fed. R. Civ. P. 23(e)(2)(A) (providing that whether "the class representatives and class counsel have adequately represented the class" is a relevant factor in determining whether to approve a proposed settlement). In the adequacy analysis, the Court considers "the adequacy of the named Plaintiff as representatives of the proposed class's myriad members, with their differing and separate interests." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). While the Supreme Court has noted that adequacy and typicality analysis "tend [ ] to merge," *Windsor*, 521 U.S. at 626 n. 20, courts have rejected proposed class representatives due to "conflicts of interest" or "serious credibility problems," *Birchmeier*, 302 F.R.D. at 252 (internal quotation marks and citations omitted).

Here, Plaintiff has no conflicting interests with Class Members. In fact, by investigating, documenting, filing, prosecuting this action, and by providing discovery responses, Plaintiff has demonstrated a desire and ability to protect Class Members' interests. There is nothing to suggest that Plaintiff has any interest antagonistic to the vigorous pursuit of the class claims against Defendant. Rather, Plaintiff's interests are perfectly aligned with those of the Class. In addition, putative Class Counsel are practitioners with substantial experience in consumer and class action litigation. The requirements of Rule 23(a), therefore, are satisfied.

### 1. The Rule 23(b)(3) Factors Are Satisfied.

Rule 23(b)(3)'s predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S.

591, 623 (1997)). Predominance is satisfied so long as individual issues do not "overwhelm" common issues. *Id.* (quoting *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013)). Common issues predominate here because the central liability question— *i.e.*, whether a debit was made in violation of the EFTA—can be established through generalized evidence. Predominance is "readily met" in certain consumer cases. *Windsor*, 521 U.S. at 625. The touchstone for predominance analysis in the Seventh Circuit is efficiency. *Butler v. Sears, Roebuck & Co.,* 702 F.3d 359, 362 (7th Cir. 2012) ("*Butler I*"), *vac'd on other grounds* 133 S. Ct. 2768 (2013), *judgment reinstated*, 727 F.3d 796 (7th Cir. 2013) ("*Butler II*"), *cert. denied* 134 S. Ct. 1277 (2014). "[T]he requirement of predominance is not satisfied if 'individual questions ... overwhelm questions common to the class.'" *Butler II,* 727 F.3d at 801 (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 133 S. Ct. 1184, 1196 (2013)).

Because the claims are being certified for purposes of settlement, there are no issues with manageability. *Windsor*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial."). Additionally, resolution of tens of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Butler*, 727 F.3d at 801 (noting that "the more claimants there are, the more likely a class action is to yield substantial economies in litigation") (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)). Thus, certification for purposes of settlement is appropriate.

## V.     CONCLUSION

The proposed class action Settlement is fair, reasonable, adequate, and well within the permissible range of possible judicial approval. It should, therefore, be approved in all respects,

and the Parties respectfully ask that the Court enter a Final Approval Order and Judgment under Rule 23(e).

Date: October 5, 2022

Respectfully submitted by both parties

Plaintiff,
DANIEL O'MALLEY, Individually and on Behalf of Others Similarly Situated

By: _/s/ Angel P. Bakov_____

_/s/ Glen J. Dunn_____
        Plaintiff's Attorneys

Angel P. Bakov (ARDC No. 6308535)
Bakov Law, Ltd.
One East Wacker Drive, Suite 2510
Chicago, Illinois 60601
(312) 880-1008
abakov@bakovlaw.com

Glen J. Dunn (ARDC No. 6274852)
Glen J. Dunn & Associates
One East Wacker Drive, Suite 2510
Chicago, Illinois 60601
(312) 546-5056
gdunn@gjdlaw.com

Defendant,
KASS MANAGEMENT SERVICES, INC.,

By: _/s/ John D. Dalton_____
        One of Defendant's Attorneys

John D. Dalton (ARDC No. 6197108)
Christopher D. Mackey (ARDC No. 6324275)
O'HAGAN MEYER, LLC
One East Wacker Drive, Suite 3400
Chicago, Illinois 60601
(312) 422-6100
(312) 422-6110 facsimile
jdalton@ohaganmeyer.com
cmackey@ohaganmeyer.com